IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        v.<br><br>TERRY J. COLLEY (BOP REG. # 45043-019),<br>    DEFENDANT. | CRIMINAL ACTION NO.<br>2:94-CR-7-RWS-JCF-1 |

### Government's Response to Defendant Terry Colley's Motion for Compassionate Release

The United States respectfully requests that the Court deny Defendant Terry Colley's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because (1) no extraordinary and compelling reason supports Mr. Colley's release; (2) Mr. Colley poses a danger to the community if released; and (3) the § 3553(a) factors do not support reducing Mr. Colley's sentence, much less reducing it to time served.

## Background

### 1. Procedural history

On July 12, 1994, a federal grand jury in the Northern District of Georgia returned a seven-count indictment against Mr. Colley, charging him with one count of attempted bank robbery, in violation of 18 U.S.C. § 2113(a) (Count One); three counts of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) & (d) (Counts Two, Four, and Six); and three counts of using and carrying a firearm during and in relation to a crime of violence—*i.e.*, during each of the armed bank robberies—in violation of 18 U.S.C. § 924(c) (Counts Three, Five, and Seven).

(Doc. 1.) On January 9, 1995, at the conclusion of trial, a jury convicted Mr. Colley of all seven counts. (Doc. 28.)

On September 29, 1995, U.S. District Court Judge Robert L. Vining, Jr. sentenced Mr. Colley to 60 years of imprisonment, which included 15 years total for the four robbery counts, plus 5 years consecutive for the first § 924(c) count and 20 years consecutive each for the second and third § 924(c) counts. (Doc. 31 (judgment and commitment order); Doc. 108 (transcript of sentencing hearing).) This sentence was 12 months above the low end of Mr. Colley's Guideline range, which had been enhanced due to Mr. Colley making a threat of death during the attempted robbery and obstructing justice by coercing or threatening two witnesses during trial. (*See* Doc. 108 at 11, 15.) Because Mr. Colley was already serving a 20-year state sentence for another bank robbery, he did not begin serving his federal sentence until February 22, 2001, when the State of Georgia paroled him. (*See* Doc. 181 at 4.)

At the sentencing hearing in this case, the Court and the parties discussed that Mr. Colley was facing several other indictments – "two in middle Georgia, one in Tennessee, two in the Northern District of Alabama, and one in the District of South Carolina" – but that those jurisdictions were waiting to hear what sentence Mr. Colley would receive in this case before they decided how to proceed. (*Id.* at 13-14.) Subsequently, the Middle District of Georgia dismissed its two bank robbery charges against Mr. Colley. (*See* Docket for *United States v. Colley*, 5:94-CR-16-WDO-1 (M.D. Ga.), and *United States v. Colley*, 4:95-CR-15-HL-1 (M.D. Ga.).) Mr. Colley pled guilty to the two armed bank robbery charges against him in the Northern District of Alabama and received a 140-month sentence to run

2

concurrently with the sentence in this case. (*See* Docket for *United States v. Colley*, 1:94-CR-125-RBP-ETC-2 (N.D. Al.).) And the Government dismissed the armed bank robbery charge pending against him in South Carolina, specifically because Mr. Colley had been tried in Georgia in this case. (*See* Docket for *United States v. Colley*, 3:94-CR-854-JFA-1 (D.S.C.).)[1]

Mr. Colley appealed his conviction and sentence in the instant case and collaterally attacked them, but to no avail. (*See generally* Docket.) On October 21, 2019, Mr. Colley first asked this Court to reduce his sentence from 60 years to 22 years or time served as a compassionate release under § 3582(c)(1)(A)(i). (*See* Doc. 181 at 25.) In light of the COVID-19 pandemic, Mr. Colley recently amended his motion for compassionate release, but still seeks a reduction that would result in his imminent release from prison, decades early. (*See* Doc. 210.)

**2. Government's response to the COVID-19 pandemic**

The Department of Justice has taken many steps to protect the health and safety of federal inmates during this pandemic. On March 26, the Attorney General directed the Bureau of Prisons ("BOP") to "prioritize the use of [its] statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." Memorandum from the Attorney General, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), *available at* https://www.justice.gov/file/1262731/download. Inmates are more likely to be granted home confinement when the CDC risk factors indicate their greater

---

[1] The Government has not been able to access PACER records for the Eastern District of Tennessee.

3

vulnerability to COVID-19. *Id.* at 1-2. On April 3, the Attorney General issued a follow-on memorandum that instructed BOP to prioritize review of home confinement applications of inmates at institutions where there have been COVID-19 outbreaks. Memorandum from the Attorney General, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020), *available at* https://www.justice.gov/file/1266661/download.

BOP is devoting all available resources to implement this directive. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General for confinement. Additionally, while no request is necessary, any inmate who believes he or she is eligible may request to be referred to home confinement and provide a release plan to his or her Case Manager. *Id.* These and other efforts by BOP to combat the coronavirus, as well as up-to-date infection data, are detailed at the following webpage: https://www.bop.gov/coronavirus. Here, Mr. Colley is ineligible for home confinement due to his offense of conviction (armed bank robbery) and high risk of recidivism.

Moreover, BOP has taken significant measures to protect the health of the inmates in its charge:

a. All inmates in every BOP institution are secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the

movement of inmates and detainees among its facilities, with exceptions for medical treatment and similar exigencies.

    b.  All staff and inmates have been and will continue to be issued an appropriate face covering and strongly encouraged to wear the face covering when in public areas when social distancing cannot be achieved.

    c.  Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission and at medical centers, all staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

    d.  Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

    e.  Social and legal visits were stopped as of March 13, 2020, and remain suspended to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Legal visits will be permitted on a case-by-case basis

after the attorney has been screened for infection in accordance with the screening protocols in place for prison staff, contractors, and visitors.

## Discussion

Under 18 U.S.C. § 3582(c)(1)(A)(i), the district court "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Pursuant to statutory authority, the Sentencing Commission issued a policy statement at § 1B1.13 to govern compassionate release. That statement requires additionally that the court find "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Even if the defendant establishes "extraordinary and compelling reasons" and establishes that he is not a danger to the community, § 3582 leaves it to the district court's discretion whether to reduce the sentence. The court must consider the § 3553(a) factors to determine if any reduction would be appropriate. *See, e.g., United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

On each point, the inmate bears the burden of proof. *See, e.g., United States v. Rodriguez-Orejuela*, No. 03-CR-20774, 2020 WL 2050434, at *5 (S.D. Fla. Apr. 28, 2020) ("In seeking a reduced sentence under this framework, the defendant 'bears the burden of establishing that compassionate release is warranted.'").

Mr. Colley's motion for compassionate relief fails because (1) "extraordinary and compelling reasons" do not exist; (2) he poses a danger to the community if

released; and (3) the § 3553(a) factors do not justify reducing his sentence, much less to time served.

**A. No extraordinary and compelling reason warrants a sentence reduction.**

Neither Mr. Colley's slight obesity nor Congress's change to sentencing for multiple § 924(c) charges in the First Step Act constitutes an extraordinary and compelling reason warranting compassionate release.

> **1. Mr. Colley's slight obesity and other medical and personal characteristics do not pose an especially profound risk from COVID-19 or establish an extraordinary and compelling reason to release him from prison decades early.**

The mere existence of the COVID-19 pandemic "cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). District courts "cannot release every prisoner at risk of contracting COVID-19 because [they] would then be obligated to release every prisoner." *United States v. Wright*, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020). Instead, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19CR112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020).

The burden is on the defendant to explain how his or her medical conditions lead to a heightened risk of contracting COVID-19 and falling seriously ill as a result. *See United States v. Eagan*, Case No. 1:18-cr-00282-MHC-JFK, Doc. 35, at *9 (N.D. Ga. June 22, 2020) (rejecting compassionate release for HIV-positive inmate

who had only stated that he takes medication for his condition and failed to "describe the nature of his HIV (including the extent to which he is immunocompromised), whether he has a low CD4 cell count, and whether he receives antiretroviral therapy"). The mere fact that an inmate's "medical conditions theoretically exacerbate the likelihood of contracting COVID-19" is not enough: those conditions must have "deleterious effects . . . that currently make him more likely to contract COVID-19." *Id.* at \*10; *see also, e.g.*, *United States v. Freeman*, CR 406-336, 2020 WL 2449345, at \*1-2 (S.D. Ga. May 12, 2020) (finding no extraordinary and compelling circumstances where defendant had diabetes, asthma, high blood pressure and is on a C-PAP breathing machine but "provide[d] no medical evidence to support his alleged serious medical conditions or the impact that COVID-19 would have upon him individually": "generalized concern about possible exposure is at this point too speculative to qualify as extraordinary and compelling").

Applying these standards, other courts have held that obesity, race, and hypertension combined do not pose an especially profound risk from COVID-19 or establish an extraordinary and compelling reason justifying release. *See, e.g.*, *United States v. Golden*, Case No. 1:17-cr-00287-LMM-JFK, Doc. 357, at 7 (N.D. Ga. Aug. 26, 2020) (denying compassionate release to an African-American inmate with hypertension and a "BMI of 31.9–33 [because] Defendant's weight is near the low end of the obesity threshold, which starts at 30"); *see also, e.g.*, *United States v. Manny*, 2020 WL 4589038, at \*4 (D.N.D. Aug. 10, 2020) (finding no extraordinary and compelling grounds despite inmate's diabetes, high blood pressure, high cholesterol, and obesity increasing his risk from COVID-19);

8

*United States v. Wilfred*, 2020 WL 4365531, at *5 (E.D. La. July 30, 2020) (finding inmate's obesity – BMI of 38.4 – paired with hypertension was not extraordinary or compelling); *United States v. Takewell*, No. 14-00036, 2020 WL 4043060, at *3-*4 (W.D. La. July 17, 2020) (finding inmate's obesity – BMI of 38.1 – and hypertension did not constitute extraordinary and compelling circumstances); *United States v. Votaw*, 2020 WL 3868468, at *2 (E.D. Cal. July 9, 2020) (finding BMI of 37.9 was not sufficient for relief); *United States v. Tranter*, 2020 WL 3841268 (N.D. Ind. July 8, 2020) (finding inmate's slight obesity – BMI of 33.1 – did not provide an extraordinary and compelling reason, while acknowledging that obesity increased the risk from COVID-19, but noting that BMI "alone provides little insight into his physical condition [and] is a notoriously blunt tool with 'clinical limitations,' including its inability to differentiate between excess fat, muscle, and bone mass"). Similarly, numerous courts have noted that prediabetes is not a COVID-19 risk factor according to the CDC. *See, e.g.*, *United States v. Thomas*, 2020 WL 4754191, at *2-*4 (W.D. Pa. Aug. 17, 2020); *United States v. Hazam*, 2020 WL 3265349, at *2-*3 (C.D. Ill. June 17, 2020) (finding no extraordinary and compelling circumstances and noting that prediabetes and latent tuberculosis are not risk factors according to the CDC).

Here, Mr. Colley is a 50-year-old African-American male who is slightly obese – BMI of 33.2 – with hypertension and prediabetes. (Doc. 210 at 12-14.) Similar to the situations in the numerous cases cited above, these factors combined simply do not constitute extraordinary and compelling reasons to let Mr. Colley out of prison decades early.

2.  **The First Step Act's change to sentencing for multiple § 924(c) charges, which Congress expressly decided was not retroactive, does not constitute an extraordinary and compelling reason warranting compassionate release.**

Mr. Colley also seeks compassionate release based on a factor that the Sentencing Commission did not identify as one of the "extraordinary and compelling reasons" that may justify compassionate release. Specifically, Mr. Colley asks this Court to find that one particular change to the sentencing laws constitutes another, undefined "extraordinary and compelling reason" to grant him compassionate release.

Mr. Colley points to Congress's decision to change sentencing for multiple § 924(c) counts. Before Congress enacted the First Step Act in 2018, "second or subsequent" § 924(c) offenses triggered increased penalties, even when charged in the same indictment as the first § 924(c) offense, but now those increased penalties apply only when a defendant commits additional § 924(c) offenses "after a prior conviction" under the section. *See* First Step Act § 403(a); 18 U.S.C. § 924(c). Thus, whereas Mr. Colley received 60 years of imprisonment when sentenced in 1995, he would likely receive only 36 years of imprisonment today, broken down as follows:

· When originally sentenced, Mr. Colley received 15 years for a series of bank robberies plus a mandatory 5 years for a first § 924(c) count, a mandatory 20 years for a second § 924(c) count, and a mandatory 20 years for a third § 924(c) count. (15 + 5 + 20 + 20 = 60 years.)

· Today, Mr. Colley likely would still receive at least 15 years for the bank robberies, but then he would receive only a mandatory additional 7 years for each of the three § 924(c) counts because he had no prior § 924(c) conviction at the time of these offenses. (15 + 7 + 7 + 7 = 36 years.)

10

A number of courts have held that this change to the sentencing laws does not provide a basis on which compassionate release may be granted.[2] *See, e.g.*, *United States v. Hudec*, 2020 WL 4925675, at *3-*4 (S.D. Tex. Aug. 19, 2020); *United States v. Jarvis*, 2020 WL 4726455, at *4 (N.D. Ohio Aug. 14, 2020); *United States v. Lewis*, 2020 WL 4583525, at *2-*3 (M.D. Fla. Aug. 10, 2020); *United States v. Martin*, 2020 WL 4464430, at *2-*4 (S.D. Ill. Aug. 4, 2020); *United States v. Rucker*, 2020 WL 4365544, at *3 (D. Kan. July 30, 2020); *United States v. Brooks*, 2020 WL 4347373, at *5 (E.D. Pa. July 29, 2020); *United States v. Plowright*, 2020 WL 3316989, at *1-*2 (S.D. Ga. June 18, 2020); *United States v. Rollins*, 2020 WL 3077593, at *1 (N.D. Ill. June 10, 2020); *United States v. Strain*, 2020 WL 1977114, *4 (D. Alaska Apr. 24, 2020).

Moreover, even if this Court were to conclude that it could grant compassionate release on this basis, it should not do so. Although Mr. Colley would indeed likely receive a shorter sentence if convicted today, he ignores two important caveats. First, Mr. Colley ignores the fact that Congress expressly declined to make the particular sentencing change retroactively applicable to cases like Mr. Colley's. *See* First Step Act § 403(b) (stating that the changes to 18 U.S.C. § 924(c) "shall apply to any offense that was committed before the date of

---

[2] As noted in Mr. Colley's brief, a number of other courts have concluded to the contrary that relief is in fact available on this basis. (Doc. 210 at 37-38.) But those courts' decisions contravene the language and the spirit of the First Step Act, which determined that the Act's changes to § 924(c) sentencing were not retroactive. *See United States v. Hudec*, 2020 WL 4925675, at *3-*4 (S.D. Tex. Aug. 19, 2020) (providing a thorough discussion); *United States v. Martin*, 2020 WL 4464430, at *2-*4 (S.D. Ill. Aug. 4, 2020) (same).

11

enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment"). Second, Mr. Colley ignores the fact that, after he was sentenced in 1995, numerous other jurisdictions dismissed charges against him or imposed concurrent sentences in reliance on the fact that Mr. Colley had already received a 60-year sentence in this case.

This Court should neither substitute its judgment for Congress's—regarding the retroactive application of the changes to § 924(c)—nor assume that other jurisdictions would still have declined to prosecute Mr. Colley back in 1995 if he had received 36 years of imprisonment instead of 60. Nor should it assume the sentencing judge would have imposed a lower sentence when it chose to sentence Mr. Colley to 12 months above the low end of his Guideline range. Rather, this Court should deny Mr. Colley's motion for compassionate release and allow the Government to assess his separate clemency petition and take action via that mechanism, if appropriate.[3]

**B. Mr. Colley poses a threat to the community.**

To qualify for compassionate release, the inmate must prove that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). A defendant may pose a danger to the community not only through "physical violence" but also if he "might engage in criminal activity to the detriment of the community." *United States v. King*, 849

---

[3] Incidentally, at the U.S. Pardon Attorney's request, the U.S. Attorney's Office for the Northern District of Georgia recently provided feedback on Mr. Colley's clemency petition and supports commuting Mr. Colley's sentence to 36 years of imprisonment.

F.2d 485, 487 n.2 (11th Cir. 1988) (quoting legislative history of the Bail Reform Act for proposition that "dangerousness" and "safety" are broad terms that contemplate criminal activity beyond "physical violence").

As noted above, Mr. Colley's lengthy criminal history includes not just the three armed bank robberies and one attempted bank robbery for which he was convicted in this case, but at least five other bank robbery charges in Georgia and three other Southeastern states, plus the state bank robbery charge for which he was already serving a separate 20-year sentence. (*See* Doc. 108 at 13-14; *see also id.* at 15 (noting that Mr. Colley was Criminal History Category VI, the highest category defined in the Guidelines).) In addition, Mr. Colley had made at least one threat of death during the attempted robbery in this case and then coerced or threatened two witnesses during trial. (*Id.* at 11, 15.) In spite of his relatively good behavior while incarcerated, Mr. Colley is only 50 years of age now and has been assessed as a high risk of recidivism. In light of Mr. Colley's long record of violent acts and threats, Mr. Colley has failed to establish that he is not a danger to the safety of the community. Accordingly, this Court should deny Mr. Colley's motion for compassionate release.

**C. Even if the Court were to conclude that a cognizable "extraordinary and compelling reason" exists here, the § 3553(a) factors do not support reducing Mr. Colley's sentence to time served as he requests.**

Section 3553(a) requires district courts to consider the following factors in imposing a sentence:

· the nature and circumstances of the offense and the history and characteristics of the defendant;

13

- the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed correctional treatment;

- the kinds of sentences available;

- the applicable sentencing guidelines range;

- pertinent policy statements of the Sentencing Commission;

- the need to provide restitution to any victims; and

- the need to avoid unwarranted sentencing disparities.

18 U.S.C. § 3553(a). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (internal quotation marks omitted).

Here, Mr. Colley was convicted for attempting one bank robbery in which he made a threat of death and committing three other bank robberies in which he brandished a firearm. Rather than accept responsibility, he went to trial, during which he threatened or coerced two witnesses, and was convicted by a jury.

Although Mr. Colley's Guideline range would be different if calculated today, he cannot argue that the district court would have sentenced him to a lower sentenced when the court chose to sentence him a year *above* the bottom of his Guideline range at the time. Moreover, given the fact that numerous other jurisdictions dismissed still more bank robbery charges against Mr. Colley or imposed concurrent sentences based on the sentence he received in this case, this Court should not substitute its judgment for the sentencing judge's decision after he presided over Mr. Colley's trial.

In any event, if this Court nevertheless chooses to reduce Mr. Colley's sentence, it absolutely should not entertain Mr. Colley's request to be sentenced to time served, which would constitute a sentence far below what his Guideline range would be if he were sentenced today.[4] Reducing Mr. Colley's sentence so drastically would not reflect the seriousness of Mr. Colley's offenses, account for Mr. Colley's substantial criminal history, promote respect for the law, provide just punishment, afford adequate deterrence, or sufficiently protect the public.

## Conclusion

The United States respectfully requests that the Court deny Mr. Colley's motion for compassionate release. However, if the Court intends to grant the motion, the government requests a 14-day quarantine period and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from the inmate to the public.

---

[4] As noted above, were Mr. Colley convicted of the same offenses today, he would likely face *at least* 36 years' imprisonment. So far, he has served less than 19 years in federal custody.

Respectfully submitted,

BYUNG J. PAK
*United States Attorney*


/s/ Bret R. Hobson
*Assistant United States Attorney*
Georgia Bar No. 882520

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000; fax (404) 581-6181

## **CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that this document was prepared using Book Antiqua 13 point font, and that I have caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which automatically notifies the parties and counsel of record.

>Kimberly Sharkey
>FEDERAL DEFENDER PROGRAM, INC.
>1500 Centennial Tower
>101 Marietta Street, NW
>Atlanta, Georgia 30303
>404-688-7530
>
>Kimberly_Sharkey@fd.org

Additionally, a copy of this document has been mailed to the following address:

>Terry Colley
>BOP # 45043-019
>USP Florence
>U.S. Penitentiary
>P.O. Box 7000
>Florence, CO 81226

This 4th of September, 2020.

>/s/ Bret R. Hobson
>*Assistant United States Attorney*